Filed 7/31/26  In re M.V. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re M.V., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D087669 |
| Plaintiff and Respondent, | (Super. Ct. No. J521714) |
| v. | |
| J.V.-F. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of San Diego County, Devon L. Lomayesva, Judge.  Affirmed.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant J.V.-F.

Caitlin E. Howard, under appointment by the Court of Appeal, for Defendant and Appellant T.J.

Damon M. Brown, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Natasha Edwards, Deputy County Counsel, for Plaintiff and Respondent.

J.V.-F. (Mother) and T.J. (Father) (sometimes collectively the Parents) separately appeal from the February 18, 2026 jurisdiction and disposition findings and orders of the juvenile court. It sustained the petition brought by the San Diego County Health and Human Services Agency (Agency) on behalf of M.V., born July 2025 (Minor), and removed her from the Parents' physical custody as a result of the child's significant, "unexplained injuries" while in their care that was "diagnostic of physical abuse." (Boldface omitted.)

On appeal, the Parents contend that no substantial evidence supports the court's jurisdictional findings and orders under Welfare and Institutions Code[1] section 300, subdivision (a); and that, even if the court properly exercised jurisdiction, it failed to consider reasonable alternatives before removing Minor from their physical custody. They seek reversal of the jurisdictional findings and dismissal of the petition; or in the alternative, reversal of the disposition order and remand for a new hearing. Because there is substantial evidence in the record supporting the challenged findings and orders, we reject the Parents' contentions and affirm.

I.

A.

The Parents and Minor shared a home with paternal grandparents and two teenage paternal aunts. The Parents had no child welfare history.

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

2

The Agency received a referral on October 24, 2025, after Mother took Minor to Rady Children's Hospital (Rady's) the night before due to "multiple" unexplained "bruises" on Minor's ankle and feet. A skeletal survey of Minor also revealed a "healing posterior rib fracture."

A Rady's doctor specializing in pediatric child abuse issued the following report regarding Minor's injuries: "Bruising is the result of crush injury to the vessels. Non-mobile infants cannot independently generate enough force to cause such injuries to themselves. Rib fractures are highly specific for inflicted trauma. The mechanism for the rib fracture is extreme anterior-posterior compression of the chest wall, such as forceful squeezing, or direct impact trauma. It takes significant force to fracture infant ribs and this would not be in the realm of normal handling of a child. In the absence of a reasonable accidental trauma history, the bruising and rib fracture are diagnostic of physical abuse." (Boldface omitted.) The doctor added, "[i]f the child were to be returned to the environment in which her injuries were sustained without identification of and removal of the perpetrator, it would place her at risk of ongoing and potentially escalating forms of maltreatment which could ultimately lead to death."

On Minor's discharge from the hospital, the Agency created a safety plan for the Parents. They agreed to placement of Minor with the maternal grandmother, pending the Agency's further investigation. The maternal grandmother in turn agreed to supervise all visits between the Parents and the child.

Mother and Father reported they were Minor's "primary caregivers," including on the day Mother discovered the bruises. Mother denied knowing how Minor sustained the injuries, and did not believe that Father or anyone else in the home had purposely injured the child.

3

Father likewise denied anyone purposely injured Minor, including paternal family members and Mother. He reported that Mother suffered from postpartum depression; "had 'lots of issues' and that the whole family was 'worried for her' "; and that she did "not spend much time" with Minor and "when the mother is with [Minor], she is accompanied by the father or the paternal aunts." Father volunteered that Minor's bruising on her feet "appear[ed] like she was hit on the door," based on the "shape of the bruise." He claimed, however, to have no knowledge of that happening to the child.

Mother, who was 18 years old at the start of dependency, stated she experienced depression while a freshman in high school, but denied having postpartum depression. Law enforcement, however, reported "inconsistencies" with the Parents' statements regarding Mother's mental health and postpartum depression, and with "the parents' description of their day," when the bruising was discovered, and "the day prior." Father told law enforcement Mother was a " 'chronic liar.' "

B.

In early November 2025, the Agency filed a petition under section 300, subdivision (a), alleging that Minor "has suffered, or there is substantial risk that the child will suffer serious physical harm inflicted non-accidentally upon the child." The petition also cited section 355.1, which creates a presumption that a minor is a person described in section 300 if, "upon competent professional evidence," the minor sustains injuries that "would ordinarily not be sustained except as the result of the unreasonable or neglectful acts" of others. (§ 355.1, subd. (a).)[2]

_____

[2] We note the juvenile court did not mention section 355.1 or otherwise appear to rely on the statute in making its jurisdictional findings under section 300, subdivision (a). As we discuss later in this opinion, because

4

At the hearing on November 13, 2025, the juvenile court (1) made a prima facie finding on the petition; (2) detained Minor in the home of the maternal grandmother; and (3) ordered liberal supervised visitation and reunification services for the Parents.

C.

In its December 3, 2025 jurisdiction/disposition report, the Agency recommended (1) the juvenile court make a true finding on the petition; (2) Minor remain detained in the home of the maternal grandmother; and (3) the Parents (i) receive reunifications services and (ii) have liberal supervised visitation with Minor. The Agency reported Minor was thriving in the maternal grandmother's care and that her injuries had healed. It noted that, while the Parents "love[d]" Minor, with services they would "gain insight into the care of an infant," including "increas[ing] their safety abilities for an appropriate amount of time before [Minor] could be returned to their care."

During this reporting period, Mother continued to deny knowing how Minor had been injured, while acknowledging that she and Father were the child's "main caregivers" when they occurred and that she was "always there attentive" to Minor's needs. Father claimed Minor's bruising resulted from her "socks being too tight"; added the medical professionals had never shown them "proof (x-rays)" of Minor's rib fracture; and confirmed he and Mother had been Minor's "primary caregivers" before her injuries. Both Parents agreed to participate in services offered by the Agency, including parenting and child abuse non-protective parent classes.

---

substantial evidence supports the court's decision to take jurisdiction over Minor, we deem it unnecessary to rely on the presumption in section 355.1.

5

The maternal grandmother reported the Parents visited Minor daily and were "very careful" with, and "attentive" to, Minor. The maternal grandmother, however, had no knowledge of how Minor's injuries occurred. The paternal grandparents also reported "no concerns" about the Parents, and likewise denied having any knowledge about how Minor was injured.

D.

In its February 4, 2026 addendum, the Agency continued to follow the recommendations from its December 3, 2025 jurisdiction/disposition report. It noted the Parents maintained their daily visits with Minor, and that the visits were "going well."

During this reporting period, Father informed the Agency that the paternal grandparents had "kicked" him and Mother out of the paternal grandparents' home, forcing them to sleep in their car. Father and Mother did not disclose why they had been asked to leave, although Father reported they had since moved back in with the paternal grandparents but were looking for a place of their own.

The Agency's recommendations did not change in its updated February 18, 2026 addendum report. It noted Mother had attended three or four parenting classes, and had just started in therapy. Father had participated in two parenting classes, and was just beginning a child abuse group. The Agency observed that Father "has a lot to learn about child abuse, red flags, and how to protect [Minor]," but was "consistently visiting his daughter and learning from his classes."

E.

At the contested jurisdiction/disposition hearing on February 18, 2026, the juvenile court admitted the Agency's detention and jurisdiction/disposition reports, as well as the addenda. Neither Mother nor

6

Father asked any questions of the Agency social worker, nor did they present any affirmative evidence.

After hearing the argument of counsel, the juvenile court found by a preponderance of the evidence that the allegations in the petition were true under section 300, subdivision (a). The court explained its factual basis for taking jurisdiction included (1) the "unexplained injuries to [Minor's] feet and rib"; (2) the Parents' inability to explain how Minor received these injuries, "despite their representations that they are the primary caregivers" of Minor; and (3) the Agency's reports.

As to disposition, the juvenile court found "[b]y clear and convincing evidence" that (1) removal from the Parents' physical custody was "appropriate" and "necessary"; (2) there were "no reasonable means by which [Minor's] physical health can be protected without removing her from the . . . parents' physical custody"; and (3) the Agency had made "reasonable efforts . . . to prevent or eliminate the need for removal [of Minor] from the parents." The court ordered (1) Minor to remain in the care of the maternal grandmother; (2) the Agency to provide reunification services consistent with the case plans of Mother and Father; and (3) the Parents to have "liberal supervised visitation," with the Agency having the discretion to lift that supervision with prior notice to Minor's counsel, including for overnights.

II.

A.

The Parents contend there is insufficient evidence to support the juvenile court's jurisdictional finding that Minor was a person described by section 300, subdivision (a). We disagree.

Under subdivision (a) of section 300, dependency jurisdiction is proper if the "child has suffered, or there is a substantial risk that the child will

suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian." A jurisdictional finding that the minor is a person described in section 300 must be made "by a preponderance of [the] evidence." (§ 355, subd. (a).)

"The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child." (*In re R.V.* (2012) 208 Cal.App.4th 837, 843.) "[A]n allegation that a child *has suffered* serious physical harm inflicted nonaccidentally by a parent or guardian is sufficient to establish jurisdiction under section 300, subdivision (a)." (*In re David H.* (2008) 165 Cal.App.4th 1626, 1644 (*David H.*).) "Once the child is found to be endangered in the manner described by one of the subdivisions of section 300[,] . . . it is irrelevant which parent created those circumstances." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491–1492.)

" 'We review the jurisdictional findings for substantial evidence. [Citation.] We consider the entire record, drawing all reasonable inferences in support of the juvenile court's findings and affirming the order even if other evidence supports a different finding. [Citation.] We do not consider the credibility of witnesses or reweigh the evidence.' [Citation.] 'The parent has the burden on appeal of showing there is insufficient evidence to support the juvenile court's order.' " (*In re L.B.* (2023) 88 Cal.App.5th 402, 411–412 (*L.B.*).)

B.

We conclude substantial evidence supports the juvenile court's finding that Minor suffered "physical harm" inflicted nonaccidentally while in the Parents' care. (See *David. H.*, *supra*, 165 Cal.App.4th at p. 1644.) Both Mother and Father admitted to being Minor's "primary caregivers," including

8

on the day Mother discovered the multiple bruises on Minor's feet and ankle, and in the days leading up to that discovery.

In addition, a doctor specializing in pediatric child abuse found that Minor had suffered "multiple bruises to [the] bottom of [her] left foot and right lateral heel and right ankle"; that a skeletal survey of Minor disclosed a "[h]ealing fracture involving the posterior arch of the left ninth rib"; and opined that due to Minor's age, the lack of any "specific trauma history" to explain these findings, and what otherwise was a normal medical-workup, the child's injuries were "highly specific for *inflicted trauma*." (Italics added.) This evidence is ample proof to support the juvenile court's jurisdictional findings.

Mother, joined by Father, argues there is insufficient evidence in the record to support these findings because she and Father allegedly "had ameliorated the issues which caused the Agency's involvement" in the first instance. We disagree.

First, Mother's argument is a request of our court to reweigh the evidence and the credibility of the parties and make new factual findings favorable to the Parents, based on conflicting evidence in the record. This we cannot do on review for substantial evidence. (See *L.B.*, *supra*, 88 Cal.App.5th at pp. 411–412.)

Second, the record shows Mother and Father had just begun services at the time of the contested jurisdiction hearing. Mother had attended only three or four parenting classes; when the Agency inquired what Mother had learned to date, it was reported she was "still early in the classes." Mother also had just completed an intake assessment to begin her child abuse offender group. As to Father, he had attended two parenting classes at the

9

time of the hearing, missing another class due to work. He also had "recently enrolled" in his own child abuse offender group.

Third, the record shows "inconsistencies" in the Parents' "stories" regarding how Minor suffered her injuries. Mother initially told law enforcement she gave Minor a bath and changed her diaper shortly before she saw the bruising on the child's feet, but later admitted she and Father had showered together with Minor. Mother disclosed she changed her story because she was "afraid of getting in trouble with the maternal grandmother."

Fourth, there also were "inconsistencies" in the Parents' reports concerning Mother's mental health, including whether she suffered from postpartum depression. Mother denied having that condition. Father, however, told law enforcement Mother experienced postpartum depression that " 'got worse' " after she contracted a virus and had to "isolate from the infant"; that she "had 'lots of issues' " which caused the family to " 'worr[y]' "; and that she was a " 'chronic liar.' " This evidence supports the juvenile court's finding that Minor was in need of protection, and that the Parents had not yet "ameliorated the issues" that led to dependency.

Mother further argues that the instant case is similar to *In re D.P.* (2023) 14 Cal.5th 266 (*D.P.*). We disagree.

In *D.P.*, the Supreme Court agreed with the Court of Appeal that the parents' appeal from the juvenile court's jurisdiction order was moot, after the juvenile court found the child was no longer at risk and terminated its jurisdiction during the pendency of the appeal. (*D.P., supra,* 14 Cal.5th at p. 272.) Nevertheless, the *D.P.* court reversed the judgment and remanded the cause to the Court of Appeal for it to reconsider whether to exercise its discretion and reach the merits of the parents' appeal. (*Id.* at p. 283.) Thus,

10

it is readily apparent the legal issues presented in *D.P.* are entirely different than those raised by the Parents in our case.

D.P. is also factually distinguishable from the instant case. The juvenile court in *D.P.* relied on the section 355.1 presumption in taking jurisdiction over an infant who had an unexplained rib fracture (*D.P.*, *supra*, 14 Cal.5th at p. 274), despite its finding – based in part on expert testimony offered by the parents – that they had not " 'deliberate[ly]' " caused the child's injury (*id.* at p. 275). In contrast, the juvenile court here did not rely on the section 355.1 presumption, as we have noted, nor make any findings suggesting the Parents did not intentionally cause Minor's injuries. And, unlike the parents in *D.P.* who, at the time of jurisdiction, had successfully *completed* their case plan, including family preservation services, five months of weekly individual counseling, and parent education programming (*D.P.* at p. 275), the Parents here were just beginning in services offered by the Agency, as we also have noted. *D.P.* therefore is inapposite to our case.

Father argues on appeal that the Agency failed to prove that either he or Mother caused Minor's injuries "nonaccidentally," for purposes of subdivision (a) of section 300, noting they lived in a home with "four other people" who had "access" to Minor. The evidence, and the reasonable inferences to be drawn from it (see *L.B.*, *supra*, 88 Cal.App.5th at pp. 411–412), however, support the finding that Minor sustained injuries "specific for inflicted trauma" while in the *Parents*' care.

In any event, to accept Father's argument would once again require us to engage in fact finding based on conflicting evidence, which, as we have already noted, we cannot do on review for substantial evidence. (See *L.B.*, *supra*, 88 Cal.App.5th at p. 412.) This argument would also require us to (1) *speculate* whether others *may* have caused Minor's injuries, despite the

11

Parents' admissions (see *A.H. v. Superior Court* (2023) 89 Cal.App.5th 504, 522 [" ' "speculation is not evidence, less still substantial evidence" ' "]); and (2) ignore "legitimate and reasonable inferences" supporting the juvenile court's jurisdictional findings (see *In re S.B.* (2008) 164 Cal.App.4th 289, 297).

Father also challenges the juvenile court's reliance on the pediatrician's report that Minor's injuries were "diagnostic of physical abuse." (Boldface omitted.) He contends the doctor herself did not examine the child, spent a limited amount of time before making her diagnosis, and left open the possibility of accidental injury. However, Father's attack on the evidence once again ignores our role in conducting substantial evidence review, as we must affirm the order " 'even if other evidence supports a different finding.' " (See *L.B.*, *supra*, 88 Cal.App.5th at pp. 411–412.)

Father also claims there is no indication that the juvenile court considered whether others in the home caused Minor's injuries. We note, however, that during oral argument Father argued this exact point, as did Mother. The juvenile court nonetheless made findings that the Parents were responsible for Minor's inflicted trauma, based in part on their "representations that they [were] the primary caregivers."

Father argues the instant case is similar to the facts of *In re Roberto C.* (2012) 209 Cal.App.4th 1241, 1243 (*Roberto C.*), where the Court of Appeal affirmed the juvenile court's order dismissing the petition against the parents for insufficient evidence. It is noteworthy that in *Roberto C.*, the dependent child had been in the care of a babysitter for three weeks – Monday through Friday, from 6:30 a.m. to 4:00 p.m. – before the child fell ill at daycare from what turned out be nonaccidental trauma. (*Id.* at pp. 1245, 1254.) In reaching its decision, the *Roberto C.* court noted that it was required to

"resolve conflicts" in the evidence in "favor of the decision" (*id.* at p. 1254); and that, " '[a]bsent indisputable evidence of abuse – evidence no reasonable trier of fact could have rejected,' " it " '*must* therefore affirm the juvenile court's determination' " (*ibid.*, italics added).

Here, unlike the facts of *Roberto C.* where the dependent child had been in fulltime daycare for three weeks before falling ill (*Roberto C.*, *supra*, 209 Cal.App.4th at p. 1245), Minor had been in the Parents' care when the injuries occurred, supporting the inference they were the cause. We also note the Parents offered no *evidence* to show Minor's injuries were nonaccidental, or that another person caused them, or any plausible explanation regarding how they came about. Not unlike the *Roberto C.* court, in applying the test for substantial evidence we *must* resolve conflicts in the evidence in favor of the juvenile court's determination, which in the present case is a finding that Minor *was* a person described by section 300, subdivision (a). (See *In re D.P.* (2014) 225 Cal.App.4th 898, 905 [" 'Where there is more than one inference which can reasonably be deduced from the facts, the appellate court is without power to substitute its deductions for those of the trier of fact.' "].)

### III.

### A.

The Parents also challenge the juvenile court's dispositional findings and order removing Minor from their physical custody and keeping her placed with the maternal grandmother. They contend there is insufficient evidence that there was (1) a "substantial danger" to Minor's "physical or emotional well-being" if returned home; and/or (2) no "reasonable means" other than removal from their physical custody to protect her "physical health." (§ 361, subd. (c)(1).) We again disagree.

A juvenile court has "broad discretion" to determine a child's best

interest when crafting a disposition order. (*In re Nada R.* (2001) 89 Cal.App.4th 1166, 1179.) To remove a child from a parent's physical custody, the court must find by clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1).)

" ' "A removal order is proper if based on proof of parental inability to provide proper care for the child and proof of a potential detriment to the child if he or she remains with the parent. [Citation.] 'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. . . .' [Citation.] The court may consider a parent's past conduct as well as present circumstances." ' " (*In re Lana S.* (2012) 207 Cal.App.4th 94, 105; accord, *In re T.V.* (2013) 217 Cal.App.4th 126, 133 ["A parent's past conduct is a good predictor of future behavior."].) The court likewise should consider "the parent's response to the conditions that gave rise to juvenile court intervention" (*In re I.R.* (2021) 61 Cal.App.5th 510, 520), with the " 'focus . . . on averting harm to the child' " (*In re D.D.* (2019) 32 Cal.App.5th 985, 996).

Like jurisdictional findings, we "review a dispositional order removing a child from a parent for substantial evidence" (*In re M.V.* (2022) 78 Cal.App.5th 944, 960), " ' "keeping in mind that the trial court was required to make its order based on the higher standard of clear and convincing evidence" ' " (*ibid.*).

B.

We conclude clear and convincing evidence supports the juvenile court's disposition order. (See § 361, subd. (c)(1).) As noted, the doctor specializing in pediatric child abuse opined that (1) Minor's injuries were "diagnostic of physical abuse" (boldface omitted) and (2) if the child were "returned to the environment in which her injuries were sustained without identification of and removal of the perpetrator, it would place her at risk of ongoing and potentially escalating forms of maltreatment which could ultimately lead to death." And as also noted, the Parents admitted they were Minor's "primary caregivers" when she suffered the "inflicted trauma." This evidence supports the court's finding that there was a "substantial danger" to Minor's "physical . . . well-being" if returned to the Parents. (See § 361, subd. (c)(1).)

We further conclude clear and convincing evidence supports the juvenile court's finding that there were "no reasonable means" to protect Minor's "physical health" without removing her from the Parents' physical custody. (See § 361, subd. (c)(1).) The Parents were living at the paternal grandparents' home, with the grandparents and two teenage paternal aunts, when the injuries occurred. At the time of the jurisdiction/disposition hearing, they were still residing in the *same* home. Returning Minor to that home, after she suffered unexplained trauma "diagnostic of physical abuse" while in the Parents' care, supported the court's finding that removal was "necessary" for her safety. (Boldface omitted.)

Mother argues the juvenile court failed to make sufficient factual findings in support of Minor's removal, relying on section 361, subdivision (e). This subdivision provides in part that "[t]he court shall state the facts on which the decision to remove the minor is based." (§ 361, subd. (e).)

The record, however, shows the juvenile court found that removal and placement with the maternal grandmother was "necessary" due to "sustained[,] unexplained injuries to [Minor's] feet and rib"; and because the Parents "were unable to provide the explanation for such injuries." In addition, during the hearing the court noted the Parents were Minor's "primary caregivers" when the injuries occurred. We conclude the court's factual basis for removal satisfied section 361, subdivision (e).

Father argues there were reasonable means to protect Minor other than her removal. In support, he relies on *In re Ashly F.* (2014) 225 Cal.App.4th 803. In that case, however, "[n]o supporting evidence was offered" by the child welfare agency, as it provided only a "perfunctory" statement that " '[r]easonable efforts were made to prevent or to eliminate the need for removal of the [children] from [their] home.' " (*Id.* at p. 809.)

Here, in contrast to the facts of *Ashly F.*, the Agency included a description of its reasonable efforts to prevent removal. (See Cal. Rules of Court, rule 5.690(a)(1)(b)(i) [if petitioner recommends removal of a child from a home, the petitioner's social study must include "[a] discussion of the reasonable efforts made to prevent or eliminate removal"].) These efforts included a child and family team meeting on November 26, 2025, in which the maternal grandmother, the Parents, Agency social workers, and a team facilitator discussed the family, including its strengths and weaknesses; a developmental screening and enhancement program referral for Minor to assess her developmental needs; child abuse non-protective parent referrals and parenting classes for both Mother and Father; and a referral to Para Las Familia to determine Minor's mental and emotional state. These facts distinguish our case from *Ashly F.*

16

Finally, the Parents separately argue they could have resided with a relative, including the maternal grandmother, as an alternative to removal. We note, however, that neither of them raised this argument during the contested hearing; nor is there any evidence in the record that the maternal grandmother, or another relative (other than the paternal grandparents) would have agreed to this arrangement, or that the Agency would have supported such arrangement.

In any event, the record shows that the Parents were looking to move into a new place of their *own*, after being "kicked" out of the paternal grandparents' home for a period of time and living in their car; and that the maternal grandmother was "in the process of moving." The maternal grandmother's pending move supports the inference that having the Parents also live with her and Minor would not then have been feasible.

## DISPOSITION

We affirm the jurisdiction and disposition orders of February 18, 2026.


McCONNELL, P. J.

WE CONCUR:


BUCHANAN, J.


KELETY, J.

17